*BODNAR V. JOHN HANCOCK FUNDS, INC., et al.*, CASE NO. 2:06-CV-087 (N.D. Ind.)

**MEMORANDUM OF LAW IN SUPPORT OF THE HANCOCK
DEFENDANTS' MOTION TO DISMISS COUNTS I AND III
OF THE FIRST AMENDED COMPLAINT AND FOR A MORE
DEFINITE STATEMENT WITH RESPECT TO COUNT II**

**APPENDIX OF EXHIBITS**

*BODNAR V. JOHN HANCOCK FUNDS, INC., et al.*, CASE NO. 2:06-CV-087 (N.D. Ind.)

**MEMORANDUM OF LAW IN SUPPORT OF THE HANCOCK
DEFENDANTS' MOTION TO DISMISS COUNTS I AND III
OF THE FIRST AMENDED COMPLAINT AND FOR A MORE
DEFINITE STATEMENT WITH RESPECT TO COUNT II**

**APPENDIX OF EXHIBITS: EXHIBIT A**

**ADOPTION AGREEMENT**

## ADOPTION AGREEMENT

Reference is made to the Group Trust Agreement dated as of April 1, 1995 (the "Trust Agreement"), by and between John Hancock Funds, Inc. ("JHFI") and Investors Bank & Trust Company (the "Trustee") creating the John Hancock Funds, Inc. Group Trust (the "Group Trust"). All capitalized terms used in this Adoption Agreement and not otherwise defined shall have the respective meanings set forth in the Trust Agreement.

Subject to the following terms and conditions, the undersigned Participating Plan hereby (i) subscribes to participate in the Group Trust for the purpose of funding the stable value investment option offered by such Participating Plan to its Participants through the purchase by the Trustee of Group Annuity Contracts (the "Group Annuity Contracts" or "GAC's") issued from time to time by John Hancock Mutual Life Insurance Company ("John Hancock"), (ii) incorporates by reference and adopts the Group Trust as part of such plan, and (iii) appoints JHFI as its agent (and JHFI is sometimes referred to as the "Agent") to provide certain ministerial services required in connection the Group Trust and the Group Annuity Contracts; all as more fully set forth below.

### I. THE JOHN HANCOCK FUNDS, INC. GROUP TRUST

Subject to the receipt of funds sufficient for such purpose, the Group Trust will purchase a John Hancock Group Annuity Contract each calendar quarter with the Net Contributions made to the Group Trust by the undersigned Participating Plan and all other Participating Plans. Each GAC so purchased will relate to a specified amount of Net Contributions, and will provide for a net guaranteed interest rate (the "Net Guaranteed Interest Rate") and a specified maturity date (the "Guarantee Expiration Date"). All Contributions received by the Trustee (net of any withdrawals and Expenses) will be simultaneously deposited in a GAC.

Each Participating Plan will participate in all assets of the Group Trust, and at any time will be credited with an interest in all then outstanding GAC's equal to its Pro Rata Share of the Group Trust. A Participating Plan's Pro Rata Share of the Group Trust at any time is equal to the ratio of its Net Contributions over the Net Contributions of all Participating Plans as of such time.

A Participating Plan may discontinue making Contributions to the Group Trust at any time. A Participating Plan may withdraw Contributions previously made (together with earnings thereon, less applicable Expenses, and net of any prior withdrawals), at any time, either in whole or in part, subject to the terms and conditions of the then outstanding GAC's.

### II. THE GROUP ANNUITY CONTRACTS

A. **Crediting of Interest.** Each calendar quarter, the Trustee or its agent will provide the John Hancock with an estimate of the aggregate amount of Net Contributions expected to be received during the next following calendar quarter. The Trustee or its agents may base its estimate on information provided by JHFI as Agent for the Participating Plans. Based on such estimate, John Hancock will specify to the Agent, in a written Confirmation Letter issued approximately one week before the end of each calendar quarter, an interest rate to be effective for Net Contributions received during the next following quarter, and on the first day of the next following quarter John Hancock will issue a GAC and establish a Net Guaranteed Interest Rate thereunder at the specified rate. The Agent will be responsible for notifying the Participating Plans of the Net Guaranteed Interest Rate quoted in such specifications. All Net Contributions during that quarter will be credited with such rate. However, if Net Contributions exceed the estimate, the amount in excess of the estimate will be credited with that rate only until the end of the calendar quarter. At the end of the calendar quarter any excess Net Contributions will roll over into the next quarter's GAC at the interest rate applicable to the next quarter's GAC. If the Net Contributions actually received are less than the estimate, the Net Guaranteed Interest Rate may be reset as of the end of the quarter, so as to amortize any economic gain or loss associated with such shortfall over the remainder of the GAC's term.

Subject to adjustment or rollover as described in the preceding paragraph, from the date that Contributions are deposited into a GAC, to and including the day preceding the Guarantee Expiration Date specified in the GAC (generally the third anniversary of the date of issue of the GAC), the John Hancock will credit the daily equivalent of the Net Guaranteed Interest Rate specified in that GAC to that day's ending balance

(including any Contributions, less any transfers and withdrawals made that day) in the account (hereinafter referred to as the "GIC Account") established by the John Hancock pursuant to the terms of that GAC.

However, because Contributions and (subject to the terms of each GAC) withdrawals may be made daily, and because each Participating Plan at any time has a beneficial interest in all then outstanding GAC's owned by the Group Trust, the effective daily interest rate credited on all Net Contributions to the Trust will be determined based on a weighted average of all Group Annuity Contracts then outstanding. On any day, all Participating Plans will be credited with the same effective rate, regardless of when their Contributions to the Group Trust were made, and each Participating Plan will be credited with its Pro Rata Share of the accrued earnings for that day.

B. **Participant Withdrawals.** When a Participating Plan requests in writing a withdrawal from the Group Trust to satisfy a Participant's withdrawal request, the Trustee or its agent will so notify the John Hancock, whereupon the John Hancock will transfer the amount to the Trustee for payment to the Participating Plan subject to the following:

1. Withdrawals made on behalf of a Participant in a Participating Plan in the event of retirement, death, disability, termination of employment, involuntary layoff, in-service withdrawals, loans, reaching age 59 ½, hardship, or due to a Participant's investment election to transfer any portion of his Participant's Account will be made at book value, to the extent of the balance in such Participant's account.

2. All transfers will be made within one business day of receipt of written notice by the John Hancock or on the date specified in the notice, whichever is later.

3. Aggregate withdrawals may not be greater than the balance in a Participating Plan's aggregate GIC Account, which will be exhausted on a last in, first out basis.

If, however, a Participant elects to withdraw a portion of its Participant account as a result of any of the events listed below, the withdrawal will be considered to be initiated by the Participating Plan. If the withdrawal will adversely affect the John Hancock's financial experience under the GAC's, the John Hancock reserves the right to apply a transfer adjustment factor to the amount to be transferred.

4. The operation of the Group Trust has been changed, by amendment or practice.

5. The withdrawal is the result of a Participant Communication (as defined below) which in the reasonable judgment of the John Hancock is designed to induce Participants to make a withdrawal from the GAC's under the Group Trust. In addition, John Hancock may presume that a Participant Communication has occurred if a withdrawal occurs after a communication to Participants, a copy of which has been requested by the John Hancock, and neither the Participating Plan nor the related employer provides the John Hancock with a copy of such communication within ten business days. A "Participant Communication" is any communication concerning investment elections under the Participating Plan that is prepared by or on behalf of the Participating Plan or its related employer for delivery to Participants, other than factual information about investment options, general discussions of asset allocation principles and investment strategies, and information required to maintain the tax qualified status of the Participating Plan.

6. The Participating Plan has offered its Participants a "Competing Fund" that will accept transfers from the Group Trust. A "Competing Fund" is one that, in the reasonable judgment of the John Hancock, provides a stable value investment option with a substantially similar risk-return profile as the Group Trust.

C. **Scheduled Repayment of the GIC Account.** The John Hancock will issue a new GAC on each GAC's Guarantee Expiration Date, unless prior to such date the John Hancock has received written notice from the Trustee or its agent that the Group Trust is being discontinued.

2

In the event of discontinuance, if a Guarantee Expiration Date falls on a non-business day, the transfer of the GIC Account under such GAC of the expiring GAC will be made on the business day preceding such date, with interest and any applicable expenses adjusted accordingly.

In the event of discontinuance, if a Guarantee Expiration Date falls on the last business day of the calendar year, then the John Hancock may upon not less than 14 days' prior written notification to the Contract Holder transfer the GIC Account under such GAC on the first business day of the succeeding calendar year.

C. Scheduled Repayment of the GIC Account *Continued*

Appropriate adjustments will be made to the interest and any applicable expenses. If, however, the Contract Holder notifies the John Hancock of an objection within seven days of its receipt of notification, the transfer will be made as originally scheduled.

D. **Unscheduled Transfers.** A Participating Plan may request an "Unscheduled Transfer" from the Group Trust of all of its transferable balance at any time for any reason. (An "Unscheduled Transfer" is any transfer other than a permitted Participant withdrawal described in B. above or a scheduled repayment described in C. above.) Upon receipt of such request, or upon written notice from a Participating Plan to terminate its participation in this Trust, the Trustee or its agent will inform the John Hancock, and the John Hancock will set a series of transfer dates to transfer the requested amount, up to the transferable balance of the Participating Plan's GIC Accounts to the Participating Plan in installments at book value. The initial transfer date will be the last business day of the calendar quarter following receipt of the written notice. Subsequent transfers will occur quarterly, annually or as mutually agreed upon by the Participating Plan and the John Hancock. The John Hancock will complete the transfer in installments not later than the latest Guarantee Expiration Date of any GAC outstanding on the date written notice is received. Each transfer shall include interest accumulated during the installment period. Any outstanding expenses allocated to the Participating Plan, including its Pro Rata Share of "Expenses" as defined in the Group Trust, will reduce its transferable balance.

The transferable balance shall be equal to the Participating Plan's Net Contributions to the Group Trust (i.e., the sum of its Contributions, plus earnings thereon, less any withdrawals -- all as calculated in accordance with the applicable GAC's) as of the initial transfer date, less any accrued but unpaid expenses allocated to the Participating Plan.

In the event that a Participating Plan is no longer a full service 401(k) client of JHFI, or is no longer qualified under Section 401(a) of the Internal Revenue Code, the Participating Plan shall be deemed to have requested an Unscheduled Transfer of its entire transferable balance (as defined above) in accordance with the above or with the following: the transferable balance multiplied by a transfer adjustment factor will be transferred in a lump sum on a business day specified as the transfer date by the Participating Plan in a written notice, provided it is not less than ninety days after receipt of such notice by the John Hancock. A statement of the applicable procedures to determine the transfer adjustment factor will be furnished to the Participating Plan upon request.

In the event that an Unscheduled Transfer of the entire transferable balance is requested on behalf of an employer-directed Participating Plan, such Participating Plan may choose to receive such transfer either in installments (as described above) or in a lump sum subject to the application of a transfer adjustment factor (as described above). In the event of a lump sum transfer pursuant to this paragraph, however, the transfer adjustment factor will never be greater that one (1.00).

E. **Expenses.** The John Hancock will bill a Participating Plan for any special services (such as maintaining Participant records, GAC amendments, lump sum payments to Participants) performed under the GAC's. Special services must be requested by a Participating Plan in writing. If the expense charge is not paid within thirty-one days of the date of billing, it will be deducted from such Participating Plan's interest in the GIC Account established under the most recently issued GAC. Such expenses are independent of any Expenses payable under the Group Trust Agreement

If a Scheduled Repayment or Unscheduled Transfer is made, any outstanding expenses allocated to a Participating Plan will be deducted from the amount to be transferred.

3

F. **Annuities.** A Participating Plan has the option to purchase annuities for its Participants who have retired. Any annuities to be purchased under the GAC's will be established in accordance with then current procedures of John Hancock for group annuity contracts of the same class and may be in any form which is then being offered under such contracts. Information about the annuities and purchase rates may be obtained from the John Hancock.

G. **Trustee's Agent; Notices; Payment of Contributions.** The Trustee has appointed John Hancock Signature Services, Inc. ("JHSSI") as its agent to maintain records, give and receive notices and reports, and take certain other actions in connection with the Group Trust and the GAC's, all as more fully set forth in that certain Administrative Services Agreement dated as of April 1, 1995, by and among the Trustee, JHSSI and the John Hancock. Unless otherwise directed in writing by the Trustee, any notice or other communication to the Trustee shall be addressed to:

> John Hancock Signature Services, Inc.
> P.O. Box 9277
> Boston, MA  02205-9277

Unless otherwise directed in writing by the Participating Plan, any notice or other communication to the Participating Plan shall be addressed to:

_____
_____
_____
_____
_____

All notices may be delivered in person, by commercial courier service, or by US mail postage prepaid, and shall be effective when actually received.

The payment of all Contributions shall be made as directed from time to time in writing by JHSSI.

H. **Governing Laws.** The GAC's are issued in and governed by the laws of the Commonwealth of Massachusetts, and all sums payable by the John Hancock under the GAC's will be payable from its Home Office in Boston, Massachusetts.

## III.  CERTIFICATION ON BEHALF OF PARTICIPATING PLAN

The undersigned being duly authorized to execute and deliver this Adoption Agreement and with full power and authority to bind the Participating Plan named herein, hereby certifies for and on behalf of itself and such Participating Plan, as follows:

A. That such Participating Plan is a defined contribution plan qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), that it will provide from time to time such evidence of qualification as the Trustee, JHFI or the John Hancock may reasonably request, that it will promptly notify the Trustee, JHFI and the John Hancock if at any time it fails to be or remain so qualified, and that by reason of such qualification it is exempt from Federal income taxation under Section 501(a) of the Code.

B. That such Participating Plan is a full service 401(k) client of John Hancock Funds, Inc.

C. That such Participating Plan does not offer a competing stable value investment option to its Participants.

D. That it will provide, or permit the John Hancock and the Trustee or its agents to obtain, all financial statements and information which may reasonably be required in the administration of the GAC's or the Group Trust, and that the John Hancock and the Trustee or its agent shall have the right to rely upon such

4

information and to act on the basis of such information. Where financial information is not certified by an independent accounting firm, the Participating Plan will permit the John Hancock, and the Trustee or its agent, or their authorized representatives, to inspect the statements, books and records of the Participating Plan relating to the GAC's and the Group Trust.

E. That it will from time to time certify to the Trustee, JHFI and the John Hancock the names of those persons who are authorized to execute instruments, give and receive notices, and otherwise take actions on behalf of the Participating Plan, and promptly notify the Trustee, JHFI and the John Hancock when any such person is no longer authorized.

F. That it is a "plan fiduciary" as defined in Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended.

G. That it understands that (i) the assets of the Group Trust will consist solely of the GAC's and the rights thereunder, (ii) its beneficial interest in the Group Trust is not transferable or assignable, and (iii) withdrawals of funds from the Group Trust will be permitted only as specifically provided in the Group Trust Agreement and the GAC's.

H. That it has received copies of, and is familiar with the form of, the Group Trust Agreement and the GAC's; it has had ample opportunity to make inquiries about the Group Trust, the GAC's and the John Hancock (including, without limitation, the credit-worthiness and claims-paying ability of the John Hancock); and JHFI or the John Hancock has answered all such inquiries to its satisfaction.

The undersigned Participating Plan appoints John Hancock Funds, Inc. as its Agent, to act on its behalf solely for the purpose of providing quarterly estimates of Net Contributions to the Trustee or its agent and accepting quarterly Confirmation Letters (described in Section II.A above) from the John Hancock. In its capacity as Agent, John Hancock Funds, Inc. agrees to promptly communicate the information contained in each Confirmation Letter to the Participating Plan.

The undersigned Participating Plan hereby acknowledges receipt of a copy of the Group Trust Agreement for the Group Trust and hereby incorporates by reference, joins in, and adopts the John Hancock Funds, Inc Group Trust as part of such plan. Without limiting the generality of the foregoing, the undersigned Participating Plan also expressly directs the Trustee to deposit all Contributions to the Group Trust made by such Participating Plan (net of withdrawals and Expenses, if any) immediately in the GAC's, and acknowledges that in doing so, and in the performance of its other duties under the Group Trust Agreement, the Trustee neither exercises any investment discretion nor renders any investment advice (and has no authority or responsibility to do so).

The undersigned Participating Plan also acknowledges that the Trustee has employed the Servicer to perform (and hereby agrees that the Servicer, and any successor servicer, and not the Trustee, shall be responsible for) all essential functions of the Trustee under the Trust Agreement, including but not limited to the maintenance of records, preparation and furnishing of reports, collection of Contributions, giving and receiving of notices, distributing bulk payments made by John Hancock pursuant to the GAC's to the appropriate Participating Plans (and to the appropriate Participants thereunder), and acting as custodian of the GAC's; provided that the Trustee shall be and remain the legal owner of all Trust assets and the Contract Holder under each GAC.

The undersigned Participating Plan also acknowledges and agrees that the John Hancock (and not the Trustee) shall be solely responsible for making payments and providing benefits under and in accordance with the terms of the GAC's.

___

Name of Plan

___

Name of Fiduciary

___

Signature

___

Name

___

Title

5

*Accepted:*

INVESTORS BANK & TRUST COMPANY, AS TRUSTEE

*[signature]*

_____
Signature

Martin J. Sullivan
_____
Name

Director
_____
Title

By its signature below, the John Hancock Mutual Life Insurance Company, as issuer of the Group Annuity Contracts contemplated herein, hereby (i) acknowledges its receipt of a copy of the Group Trust Agreement for the Group Trust and the Administrative Services Agreement (and hereby acknowledges for the benefit of the Trustee that it shall look to JHSSI and not to the Trustee for the performance of the duties described therein to be performed by JHSSI), (ii) acknowledges the existence of the beneficial interest of each Participating Plan (including the Participating Plan on whose behalf the foregoing Adoption Agreement was executed) in and to each Group Annuity Contract issued by the John Hancock to the Trustee for the Group Trust, (iii) agrees, upon request, to make payments under the Group Annuity Contracts (subject to and in accordance with the provisions of the Group Annuity Contracts) directly to or as directed by the Participating Plan of amounts thereunder which represent the Participating Plan's Pro Rata Share of the Group Trust, net (only) of the Participating Plan's Pro Rata Share of any accrued but unpaid Expenses of the Group Trust, and (iv) waives any defense to (or right of set off against) any such payment to the Participating Plan to the extent that such a defense (or right) arises out of a claim that the John Hancock may have against the Trustee (it being understood that the foregoing waiver is made exclusively for the benefit of the Participating Plan, and shall not constitute a waiver of any right that the John Hancock may have to proceed against the Trustee on account of any such claim).

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

*[signature]*

_____
Signature

Klaus O. Shigley
_____
Name

Vice President
_____
Title

JEE0010.DOC

6