UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LAURA BODNAR, *et. al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 2:06-CV-87 PS |
| ) | |
| JOHN HANCOCK FUNDS, INC., ) | |
| BISYS GROUP, INC., INVESTORS ) | |
| BANK AND TRUST CO., JOHN ) | |
| HANCOCK FUNDS, INC. GROUP ) | |
| TRUST, JOHN HANCOCK MUTUAL ) | |
| LIFE INS. CO., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

The law firm of Bowman, Heintz, Boscia & Vician offers a 401(k) plan (the "BHBV Plan") for the lawyers and other employees in the firm that was run by the John Hancock Company. When the BHBV Plan tried to withdraw all of the money out of one of the investment vehicles, it got hit with a large transaction fee. The plan believes that the fee was excessive and also that it was not credited with all interest that was due it. Pursuant to ERISA, the plan sued a number of John Hancock entities including John Hancock Funds, Inc. ("JHFI"), John Hancock Funds, Inc. Group Trust, and John Hancock Mutual Life Insurance Company. For simplicity sake I will refer to these defendants collectively as "Hancock" unless more specificity is needed. In addition, the BHBV Plan sued Investors Bank and Trust Company ("Investors"), which served as a purchasing agent for some of the investment vehicles, and the BISYS Group which provided administrative services to the Plan.

BISYS has brought a Motion for Summary Judgment [DE 43] for all claims alleged against it in the First Amended Complaint. Plaintiffs respond that summary judgment is

premature and that discovery is needed to flesh out the facts. [DE 68]. Hancock filed a Motion to Dismiss Counts I and III and for a More Definite Statement with Respect to Count II [DE 33]. For the reasons set forth below, both BISYS and Hancock's motions with respect to Count I are granted. The Hancock's Motion for More Definite Statement with respect to Count II is also granted, but their Motion to Dismiss with respect to Count III is denied. I also agree with the Plaintiffs that a decision on BISYS' summary judgment motion is premature on Counts II and III, and therefore, plaintiffs will be allowed to take discovery on those claims.

## FACTUAL BACKGROUND

The summary of the facts as set out below come both from the complaint and attachments to the complaint (or documents referred to in the complaint), *see 188 LLC v. Trinity Industries, Inc*., 300 F.3d 730, 735 (7th Cir. 2002), and from materials submitted by BISYS in support of its motion for summary judgment. Because of the differing standards of review between motions to dismiss and motions for summary judgment, I will separately set out the facts depending upon their source.

A.      **Facts From the First Amended Complaint And The Adoption Agreement**

1.      **The Group Trust**

On April 1, 1995 a Group Trust Agreement was signed creating the John Hancock Funds, Inc. Group Trust ("Group Trust"), an investment vehicle through which participating 401(k) plans contributed funds for investment. (*See* First Amended Complaint ¶ 9; Adoption Agreement at 1.) Under the terms of the Group Trust Agreement, the Investors Bank and Trust Company was given the authority to purchase Group Annuity Contracts ("GACs") from John Hancock each calendar quarter with funds contributed during the quarter by participating plans. (First Am. Compl. ¶ 12.) The GACs provided a guaranteed interest rate, and a guaranteed maturity date, generally three years after the date of issuance of the GAC. (Adoption Agreement at § I, IIA.)

Each participating plan was to be credited a pro rata share of the interest in the outstanding GAC's in an amount equal to its prorated share of the Group Trust. (First Am. Compl. ¶ 13.)

Upon the Group Trust's formation, it had contracted John Hancock Signature Services, Inc. ("the Servicer") for the performance of record maintenance, reporting, and other administrative services in connection with the Group Trust. (*See id.* ¶ 24; Adoption Agreement at § 11.G.) On June 19, 2001, John Hancock notified all participating plans that responsibility for providing these administrative services was being transferred to Universal Pensions, Inc. (First Am. Compl. ¶ 24.) Eventually, BISYS succeeded Universal Pensions, Inc. in carrying out those administrative services. (*Id.* ¶ 25.)

Also on April 1, 1995, the BHBV Plan entered into the Adoption Agreement with Investors Bank & Trust Company and John Hancock Mutual Life Insurance Company. By executing the Adoption Agreement, the BHBV Plan stipulated that it is a "plan fiduciary" as defined in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (2006). (*Id.* at § III.F.) The Adoption Agreement appoints JHFI to act on the BHBV Plan's behalf in providing estimates of the net quarterly plan contributions to Investors, receiving from John Hancock Mutual Life Insurance Company the net guaranteed interest rate for the quarter, and communicating the interest rate to the participating plans. (*Id.* § III, at 5.) Investors took on the role of depositing all plan contributions, net of expenses and withdrawals, immediately into the GACs. (*Id.*) Under the Adoption Agreement, Investors "neither exercises any investment discretion nor renders any investment advice (and has no authority or responsibility to do so)." (*Id.*) The Adoption Agreement states that:

> "[Investors] has employed the Servicer to perform (and hereby agreed that the Servicer, and any successor servicer, and not [Investors], shall be responsible for) all essential functions of [Investors] under the Group Trust Agreement, including but not limited to the maintenance of records, preparation and furnishing of reports, collection of Contributions, giving

3

and receiving of notices, distributing bulk payments made by John Hancock Mutual Life Insurance Company pursuant to the GACs to the appropriate Participating Plans (and to the appropriate Participants thereunder), and acting as custodian of the GACs . . . ." (*Id.*)

### 2. Withdrawal Of Funds And The "Transfer Adjustment Factor"

Participating plans, such as the BHBV Plan, are entitled to withdraw the entire balance of the plan's funds from the Group Trust, but such a withdrawal is subject to the application of a "transfer adjustment factor." The Adoption Agreement states:

> [a] Participating Plan may request an "Unscheduled Transfer" from the Group Trust of all of its transferable balance at any time for any reason . . . In the event that an Unscheduled Transfer of the entire transferable balance is requested on behalf of an employer-directed Participating Plan, such Participating Plan may choose to receive such transfer either in installments . . . or in a lump sum subject to the application of a transfer adjustment factor."

(Adoption Agreement § II.D.)  Presumably, this provision is in place to dissuade individual plans from withdrawing their contributions in total and thereby reducing the pooled purchasing power of the Group Trust as a whole.  Little is said about how the transfer adjustment factor is actually determined, although it does indicate that "[a] statement of the applicable procedures to determine the transfer adjustment factor will be furnished to participating plans on request." (*Id.* § II.D).  The only other provision which in any other way sets a guideline for the calculation of the transfer adjustment factor states that the factor will never be greater than one (1.00). (*Id.*)

### 3. The BHBV Plan

Between April 1, 1995 and October 2005 the BHBV Plan participants made contributions to and withdrawals from one of the Hancock trusts. (First Am. Compl. ¶¶ 15-16.)  Plaintiffs state that prior to 2005, they were never charged a fee, including a transfer adjustment factor, for transferring funds into and out of the funds. (*Id.* ¶ 17.)  This includes the time when Hancock outsourced its servicing functions to Universal Pensions, Inc. in 2001, a move that theoretically

could have triggered a Transfer Adjustment Factor because the BHBV Plan ceased being "a full service 401(k) client of JHFI." (Adoption Agreement § D.)

In July 2005, the BHBV Plan notified BISYS, as Hancock's agent, of its decision to transfer its entire balance from one of Hancock's trusts to a new investment option. (First Am. Comp. ¶ 31.) At that time the BHBV Plan also requested from BISYS a breakdown of all costs and fees associated with the transfer of its funds in the Group Trust to new investment options. (*Id.* ¶ 34.) BISYS, as agent of Hancock, represented to the BHBV Plan that the total expense for the transfer of funds from the Group Trust would be less than $1,500.00, which the BHBV Plan paid to BISYS. (*Id.* ¶¶ 35-36.) Hancock established a transfer date of October 14, 2005 as the recommended most favorable date for the liquidation of the BHBV Plan's balance. (*Id.* ¶ 33.) As of October 14, 2005, the BHBV Plan had a balance of $999.323.70 in the particular trust in issue. (*Id.* ¶ 27.) Upon the transfer of the BHBV Plan's funds out of the trust, the BHBV Plan was charged a transfer adjustment factor of $45,385.29, far more than the $1,500.00 previously stated by BISYS. (*Id.* ¶ 38.)

B.  **Additional Facts Introduced By BISYS In Its Motion For Summary Judgment**

   1. **Recordkeeping Service Agreement**

On April 1, 2004, the BHBV Plan executed a Recordkeeping Service Agreement with BISYS for the provision of administrative services in connection with the Group Trust. (Recordkeeping Contract § 1.) In the contract it is stipulated that the employer – i.e. the Bowman, Heintz law firm – "will act as plan administrator," and that "BISYS is not a "plan administrator" or "fiduciary" as those terms are defined in ERISA." (*Id.* § 2.03(a).) It is further agreed that "BISYS will have neither access to Plan assets nor discretionary authority or control over the management of the Plan or Plan assets," (*Id.* § 2.01(b)) and that "BISYS will serve as the agent and authorized representative of Employer solely for purposes of providing orders,

5

instructions, and other communications to the Plan's trustee or custodian." (*Id.* § 2.05.)

The Recordkeeping Contract includes three schedules which detail the obligations of the parties. The Recordkeeping Contract stipulates that "[a]ny task not set forth on Schedule A or Schedule C is the Employer's responsibility." (*Id.* § 2.01(a).) Schedule A lists the services provided by BISYS to the employer and plan participants, which include, among others: entering the BHBV Plan's and participants' information into the BISYS recordkeeping system, the daily valuation of participant accounts, the creation of Internet Access for plan administrators and participants, and Internal Revenue Service reporting. (Recordkeeping Contract, Schedule A.) Schedule C details the division of responsibility between BYSIS and the employer. It provides that the employer is responsible for various tasks including the setting forth of all benefits, rights and features of the pre-existing plan and explaining plan provisions/operations to employees and participants. (Recordkeeping Contract, Schedule C.) BISYS, on the other hand, is responsible for allocating contributions to the appropriate accounts and funding options, communicating changes in investment instructions to any applicable investment providers, and for delivering instructions on the issuance of drafts to the appropriate recipient. (Recordkeeping Contract, Schedule C.) Schedule B indicates that the employer will pay an annual service fee of $1,500.00 to BISYS. (Recordkeeping Contract, Schedule B.)

   **2. Summary Plan Description**

The Summary Plan Description ("SPD") defines the "Plan Administrator" as the Employer unless otherwise indicated on a "General Information Sheet," (SPD § 1) and the parties have not indicated that there is a General Information Sheet in existence which provides otherwise. The SPD also states that "[t]he legal operation of the Plan is controlled by the Basic Plan Document and not this SPD." (SPD at 2.) The Basic Plan Document is in turn defined as, "a complex legal document that has been written in the manner required by the Internal Revenue

6

Service (IRS)." The parties have not specified if the Adoption Agreement or any other document outside the record represents the Basic Plan Document referred to in the SPD.

C.      **Prayer For Relief**

Plaintiffs seek relief pursuant to 29 U.S.C. § 1132 (ERISA) although they do no specify under which sub-section of ERISA each claim is brought. Count I seeks an amount equal to the denial of benefits for the wrongful assessment of the transfer adjustment factor. Count II seeks, for an alleged failure to pay earned interest, an amount equal to the interest which accrued on the Plaintiffs' benefits plans through October 1, 2005. Count III alleges that Defendants are fiduciaries and breached their fiduciary duties toward Plaintiffs. As relief, Plaintiffs seek all benefits denied to them for both the assessment of the transfer adjustment factor and the failure to accrue and pay or credit interest on the contributions made by the Plaintiffs on the BHBV Plan. Counts IV and V are class action allegations overlapping with factual allegations presented in Counts I through III.

## DISCUSSION

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Recently, the Supreme Court addressed the pleading standards in the context of a motion to dismiss. *See Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Prior to *Twombly* the standard had basically remained static for nearly fifty years. In *Twombly*, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In so holding, *Twombly* retired the oft quoted statement from *Conley v. Gibson,* 355 U.S. 41 (1957) that a complaint survives a motion to dismiss "unless it appears beyond a doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1968-69 (quoting *Conley*, 355 U.S. at 45-46).

Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007). In *Erickson,* the Court also took up the issue of pleading standards, albeit in the context of *pro se* litigation. The Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). In an effort to reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007).

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking summary judgment the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citations omitted.) Once the movant has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). Pursuant to Rule 56(f), if a party opposing the motion for summary judgment cannot, for reasons stated by affidavit, present facts essential to justify the party's opposition, the court may refuse

8

application for judgment or order a continuance to permit discovery.  Fed. R. Civ. P. 56(f).

## A.    Count I - Wrongful Denial Of Benefits Due To Transfer Adjustment Factor

Plaintiffs do not specify which ERISA subsection under which they are seeking relief for each separate Count in their complaint.  However, Count I, which is their prayer for recovery of benefits wrongfully denied to them due to the transfer adjustment factor, and does not claim breach of fiduciary duty, can be safely assumed to be a request made under ERISA § 502(a)(1)(B).  Under this provision:

> [A] civil action may be brought by participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).  Unfortunately for Plaintiffs, a claim for benefits under this section of ERISA "is generally limited to a suit against the Plan."  *See Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004); *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n. 4 (7th Cir. 2001) ("We have continually noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.") (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996)); *Rordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (same).  In this case, Plaintiffs have failed to sue the plan for a very good reason - they *are* the plan.  The BHBV Plan is named as a Plaintiff, along with the individual participants.  The Defendants, in contrast, are agents chosen by the plan to manage and operate an investment vehicle entered into by the BHBV Plan.  Pursuant to the aforementioned general rule, this fact naturally excludes Plaintiffs from suing for benefits under ERISA.  It is worth mentioning that courts have found a limited exception to this rule where employer-defendants are found to be so intertwined with the plan as to be virtually synonymous for ERISA purposes.  *See Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001); *Neuma Inc.*, 259 F.3d at

9

872 n. 4; *Riordan*, 128 F.3d at 551. However, the exception cannot apply here where the employer – the law firm of Bowman, Heintz, Boscia & Vician, P.C. – is not named as a defendant and is in fact working in close cooperation with the Plaintiffs in pursuit of their claims. Count I of the Amended Complaint is therefore dismissed.

**B.      Count III - Breach Of Fiduciary Duties**

In Count III, Plaintiffs allege that Defendants were fiduciaries and breached their fiduciary duties by assessing the transfer adjustment factor, by failing to provide the Plaintiffs with information regarding the fees and charges related to the transfer adjustment factor, and for failing to accrue and pay or credit interest on the contributions made by the Plaintiffs. Plaintiffs have stated a valid claim in Count III pursuant to ERISA § 502(a)(2).

**1.      Relief Is Available Under ERISA § 502(a)(2)**

ERISA § 502(a)(2) states that "A civil action may be brought by . . . a participant . . . for appropriate relief under section 409 of this title." 29 U.S.C. § 1132(a)(2). § 409, in turn, provides that a fiduciary of the plan who breaches his duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . ." 29 U.S.C. § 1109. Both Hancock and BISYS argue that relief under § 502(a)(2) is not available to Plaintiffs because it only inures to the plan as a whole. *See Mass. Mut. Life Ins. Co v. Russell*, 473 U.S. 134, 142 ("A fair contextual reading of [§ 502(a)(2)] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.")   While it is true that the remedy sought under § 502(a)(2) must be on behalf of the plan as a whole, rather than for individual participants, *see Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 863 (7th Cir. 1997), the Plaintiffs' First Amended Complaint satisfies this element by naming the BHBV Plan itself as one of the plaintiffs bringing suit. Although the First Amended Complaint also names as

10

plaintiffs the individual participants affected by the Defendants' actions, adding the extra (and potentially superfluous) plaintiffs does not prevent the BHBV Plan from obtaining its appropriate statutory remedy should it prevail in this suit. In the event the BHBV Plan wins under § 502(a)(2), presumably it will compensate the individual plan participants, on a pro rata basis.

### 2. Relief Is Unavailable Under ERISA 502(a)(3)

ERISA § 502(a)(3) states:

> A civil action may be brought by a participant . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). This section – while excluding compensatory damages, punitive damages, and other forms of non-equitable relief – does provide an avenue of relief for individual participants against fiduciaries in breach of their fiduciary duties. *See Varity v. Howe*, 516 U.S. 489, 509-10 (1996). This provision serves as a "catchall," acting as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id*. at 512. That safety net is not needed here, however, as Plaintiffs have access to relief under 502(a)(2).

In *Steinman v. Hicks*, the Seventh Circuit addressed a similar question and noted that where there was confusion as to whether the plaintiffs before it were seeking relief under § 502(a)(2) or § 502(a)(3), the answer was clearly § 502(a)(2) since they were asking that defendants make good the losses to the plan resulting from their fiduciary breach. 352 F.3d 1101, 1102 (7th Cir. 2003). ("That is relief expressly authorized by section 409(a) . . . and section 502(a) is by its terms the vehicle for enforcing that section, while section 502(a)(3) is the vehicle for suits by individuals who are seeking relief just on their own behalf rather than on behalf of the plan.") In a recent case, the Sixth Circuit similarly held that plaintiffs could not bring claims

11

under § 502(a)(3) when they could already proceed under § 502(a)(2) and that latter section provides a complete remedy.  *Pfahler v. National Latex Products Co.*, 2007 WL 4395155, at * 14-15 (6th Cir. December 14, 2007).  The individual plaintiffs here seek as a remedy for Defendants' fiduciary breach an amount equal to all benefits denied, and there is nothing in that request that cannot be obtained through § 502(a)(2).  Despite the fact that § 502(a)(2) does not avail itself to participants in their individual capacities, there is nothing unique about the harms suffered by the individual plaintiffs that creates a need to craft equitable remedies on an individual basis under § 502(a)(3).  *Cf. Benjamin v. Marshal P. Morris, Ltd. Profit Sharing Plan and Trust*, 1998 WL 299434, at *5 (N.D. Ill. May 20, 1998) (allowing plaintiff to seek individual § 502(a)(3) claim alleging defendant employer breached fiduciary duty when it incorrectly informed her the plan no longer existed when she made inquiries upon her termination.)

### 3.     **The Hancock Defendants Can Be Fiduciaries**

With § 502(a)(2) as the only available avenue of relief, Plaintiffs' claim in Count III hinges on whether Defendants were fiduciaries and therefore open to the liabilities outlined by ERISA.  ERISA defines "fiduciary" as follows:

> [A]  person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The Hancock Defendants, in their Motion to Dismiss, contend that they are not fiduciaries because they merely adhered to the provisions of the Adoption Agreement when applying the transfer adjustment factor and therefore could not have taken on the requisite discretion to be categorized as fiduciaries.   In addressing the question of whether an entity is a fiduciary under ERISA, Defendants are correct that the first place to look is the plan documents.

12

*See Plumb v. Fluid Pump Service, Inc.*, 124 F.3d at 854.  However, the inquiry does not end there, as an entity "can become a fiduciary with respect to a particular activity even if there is no formal written allocation of the duty." *Id*. at 855; *see also*, *Ruiz v. Continental Casualty Co.*, 400 F.3d 986, 990 (7th Cir. 2005) ("The measure of whether a person is a fiduciary is not whether that person is formally designated as such.").  The question instead is whether the entity in question "in fact performs any of the functions described in the statutory definition, regardless of the formal relationship, if any, that [entity] has with the plan." *Id*. (quoting ABA Section of Labor and Employment Law, Employment Benefits Law 626 (2d ed. 2000).

      Even limiting the analysis to the terms of the Adoption Agreement itself, one can see that discretion is in no way foreclosed to the Defendants with respect to the "management or disposition of [the plan's] assets."  *See* 29 U.S.C. § 1002(21)(A).  Most noticeably, the Adoption Agreement says only that a plan requesting a lump-sum, total-account withdrawal (as was the case here) is subject to a transfer adjustment factor, but the document does not in any manner describe how this number is calculated or communicated.  The Hancock Defendants insisted at oral argument that the calculation of the transfer adjustment factor is not discretionary, and in support pointed out that the formulas used to calculate the amount charged are available upon request.  While this may be proven to be true in the end, for now Plaintiffs are entitled to all reasonable inferences that can be drawn from the complaint.  *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).  There is nothing on the face of the Complaint, or the attached Adoption Agreement, to suggest one way or the other as to who draws up the formulas used to determine the transfer adjustment factor, how diligently they are used as parameters to guide those applying it, or how frequently they are subject to change.  Plaintiffs must have the opportunity, through discovery, to test the existence and use of these formulas, and to prove to the Court that they left enough discretion with the Hancock Defendants to fit the ERISA

definition of fiduciary.

Accordingly, Plaintiffs' allegations do support a claim that Defendants are fiduciaries with respect to the application of the transfer adjustment factor.  The cases holding that entities are not fiduciaries when they apply the straightforward terms of a plan's documents or are bound by strict parameters in enforcing those terms do not command a different result. For example, in *Klosterman v. Western General Management, Inc.*, the court found (at summary judgment) that a claim administration company was not a fiduciary where it adjudicated claims solely based upon a computer program which utilized parameters found in the plan itself.  32 F.3d 1119, 1123 (7th Cir. 1994).  In addition, the final decision-making authority on questionable calls was placed with an entirely different entity than the defendant. *Id*.  In contrast, the only parameter identified by the BHBV Plan's Adoption Agreement is that the transfer adjustment factor can be no greater than one.  If this is indeed the only limitation, it leaves more than enough discretion to make Defendants fiduciaries under ERISA.

Hancock also cites *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, because it stands for the proposition that "[n]o discretion is exercised when an insurer merely adheres to a specific contract term." 805 F.2d 732, 737 (7th Cir. 1986) (citing *Schulist v. Blue Cross*, 717 F.2d 1127, 1132 (7th Cir. 1983).  However, that opinion goes on to hold that the complaint *did* sufficiently allege that the entities in question were fiduciaries. *Ed Miniat, Inc.*, 805 F.2d at 737.  The *Ed Miniat* court found that a contract term, even if negotiated at arms-length, can grant discretion itself and therefore create fiduciary status. *Id*. at 737 (holding that complaint stated a claim that insurer was fiduciary under ERISA where plan contract gave insurer discretion to reduce the annual rate of return it was required to pay on collected premiums); *see also*, *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2nd Cir. 1987) ("[A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over

14

factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation.").

### 4.     **Defendant BISYS Can Be A Fiduciary**

BISYS maintains that it is not a fiduciary primarily because the Recordkeeping Contract and SPD allocate to BISYS ministerial and administrative duties, and even say specifically that BISYS is not a "fiduciary." According to those documents, BISYS's main tasks are to provide orders, instructions, and other communications to the BHBV Plan's trustee or custodian. The Seventh Circuit has recognized, however, that the communication of material facts affecting the interests of plan participants or beneficiaries is recognized as a fiduciary duty. *Bowerman*, 226 F.3d at 590 ("[W]e have made clear that fiduciaries must communicate material facts affecting the interests of plan participants or beneficiaries and that this duty to communicate exists when a participant or beneficiary asks fiduciaries for information, and even when he or she does not.") (citations and quotations omitted). A plaintiff's burden in proving a breach of this duty to communicate is high, as mere negligence in the communication relied upon is not enough to create liability. *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 640 (7th Cir. 2004).("[W]hile there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable.") Instead, a breach of fiduciary duty claim based upon a misstatement requires an intent to deceive. *Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 466 (7th Cir. 2005). Yet that is precisely what Plaintiffs have alleged. *See* First Am. Compl. ¶ 57 ("The actions of the defendants in denying the benefits . . . were intentional and without legal justification."); *Id..* ¶ 54 ("The defendants failed and refused to provide the plaintiffs . . . with any information or disclosures regarding the fees or charges related to the purported 'transfer adjustment factor' that the defendants eventually charged . . .").

Thus, Plaintiffs have properly pled a breach of fiduciary duty to communicate with

respect to BISYS. The Recordkeeping Contract and SPD provided by BISYS in its Motion for Summary Judgment do not touch upon the actual performance of those communications or BISYS's intentions when making them. In any event, it's hard to ignore the fact that BISYS told the Plaintiffs that the transfer adjustment factor would be $1500 but the actual fee was thirty times that amount. Before the Court can determine whether there is a genuine issue for material fact, both parties must have time for discovery to collect and present evidence on the issue. Rule 56(f) permits this. *See National Soffit & Escutcheons, Inc. v. Superiors Systems, Inc.*, (7th Cir. 1996). Evidence pertaining to BISYS's intentions surrounding the communications and actions making up Plaintiffs' fiduciary breach claims is, for the reasons already stated, essential.

BISYS also contends that it did not have any discretion with respect to the application or establishment of the transfer adjustment factor. Plaintiffs' do not differentiate between the various defendants when alleging that they charged them over $45,000 as a result of the transfer adjustment factor application. Nor could they, as neither the Adoption Agreement, nor the supplemental documents provided by BISYS discuss who is to calculate and apply the transfer adjustment factor. If BISYS unilaterally caused the application of over $45,000 in fees to the BHBV Plan, it certainly "exercised discretionary authority or discretionary control," regardless of what the plan documents say. It may be true that the performance of ministerial duties does not make a party a fiduciary, *see Pohl v. National Benefits Consultants, Inc*., 956 F.2d 126, 129 (7th Cir. 1992), and it may be a further truth that the plan documents only provide for BISYS to perform ministerial duties with respect to the establishment and application of the transfer adjustment factor. However, the contract's terms are dispositive of the question only to the extent that BISYS carried out its duties consistent with its provisions. *See Harold Ives Trucking Co. v. Spradley & Coker, Inc.*, 178 F.3d 523, 525-26 (8th Cir. 1999)(holding that third party administrator assumed fiduciary status when it failed to notify plaintiff of reversal of coverage

16

decision, despite fact that contract only called for third party administrator to take on ministerial duties). When an entity assumes and exercises discretionary authority, it is liable as a fiduciary regardless of what the contract says. *Id*. The documents placed in the record thus far do not shed light on the various parties' responsibilities with respect to the establishment and application of the transfer adjustment factor. BISYS cannot be dismissed before those facts get sorted out through the discovery process.

**C.     Count II - Failure to Pay Earned Interest**

In Count II, Plaintiffs allege that the Defendants had a fiduciary duty and contractual obligation to pay interest on the plan's contributions and that they failed to provide the full payment and credit for all interest earned. Plaintiffs provided nothing further by way of facts or specifics pertaining to the lost interest claims. Hancock has moved for a more definite statement, arguing that Plaintiffs' have done nothing more than plead conclusory statements.

Hancock is correct; a more definite statement is needed. "The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 780 (7th Cir. 2007). The Seventh Circuit guides district courts to "keep [cases] moving, and if [a] claim is unclear, the court should require a plaintiff to prepare a more definite statement under Rule 12(e) instead of 'lavishing attention on the complaint until the plaintiff gets it just right.'" *Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). During oral argument, Plaintiffs managed to suggest a factual context for their claims, indicating that their account holdings in 2005 did not increase in an amount that was proportionate to any reasonable rate of interest, even taking into account the transfer adjustment factor. Nevertheless, Count II, as presently written, remains so vague that Defendants "cannot reasonably be required

17

to frame a responsive pleading." Fed. R. Civ. P. 12(e). It is apparent that Plaintiffs can, without very much burden, deliver a more definite statement that conforms with the factual bases Plaintiffs quickly provided during oral argument. Plaintiffs should construct such a statement so as to inform the Defendants and this Court as to the approximate time period and amount they claim that interest was not paid or credited and a brief description of the account statements or other records that prompted this claim.

**D.     Class Action Claims**

Counts IV and V of Plaintiffs' First Amended Complaint are class action allegations pertaining to the "wrongful failure to accrue and pay over or credit earned interest" and "wrongful charge of transfer adjustment factor," respectively. Defendants do not attack the class action allegations at this time except to the extent they share a common factual and legal basis with Counts I, II, and III. Count IV, which is focused on the parties' disputes over interest payments, survives pending the Plaintiffs' submission of a more definite statement for Count II. Count V, concerned with the application of the transfer adjustment factor, is dismissed to the extent it overlaps with Count I, i.e., seeks a remedy under § 502(a)(1)(B). However, Count V survives the Hancock Defendants' Motion to Dismiss to the extent it claims a breach of fiduciary duties under §§ 502(a)(2), and similarly survives BISYS's Motion for Summary Judgment, which is continued to allow the parties to conduct discovery.

**V. CONCLUSION**

For the foregoing reasons, with respect to Plaintiffs' First Amended Complaint:

(1)     The Hancock Defendants Motion to Dismiss Counts I and III and For a More Definite Statement For Count II [DE 33] is **GRANTED** as to Count I and Count II, and **DISMISSED** as to Count III;

(2)     BISYS's Motion for Summary Judgment [DE 43] is **GRANTED** as to Count I, **TAKEN UNDER ADVISEMENT** as to Count II pending Plaintiffs' filing of a

      more definite statement, and **CONTINUED** as to Count III pending further discovery.

(3)    Count I is hereby **DISMISSED;**

(4)    Plaintiffs are **ORDERED** to file a more definite statement with respect to Count II by February 15, 2008;

(5)    Plaintiffs' Motion To Deny or Continue BISYS's Motion for Summary Judgment [DE 68], is **DISMISSED** as to Count I, **TAKEN UNDER ADVISEMENT** as to Count II pending Plaintiffs' filing of a more definite statement, and **GRANTED** as to Count III so that BISYS's Motion for Summary Judgment is **CONTINUED** as to Count III;

(6)    The parties' motions with respect to Count IV is **TAKEN UNDER ADVISEMENT** pending Plaintiffs' filing of a more definite statement; and

(7)    Count V is **DISMISSED** to the extent it overlaps with Count I and seeks relief under 29 U.S.C. § 1132(a)(1)(B).

**SO ORDERED**.

ENTERED: January 15, 2008

                /s Philip P. Simon
                PHILIP P. SIMON, JUDGE
                UNITED STATES DISTRICT COURT